IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MARK E. REDDEMANN,

      Plaintiff,

  v.                                                      Case No. 10 CV 00734

NORTHERN STATES POWER COMPANY,      Judge Crabb

a Minnesota Corporation,

      Defendant.

_____

### AMENDED COMPLAINT FOR BREACH OF CONTRACT

_____

    Plaintiff, Mark E. Reddemann ("Plaintiff"), by his undersigned counsel, complains of Defendant, Northern States Power Company ("Defendant"), a Minnesota Corporation, as follows:

### JURISDICTION AND VENUE

    1.    The court has jurisdiction over this lawsuit under 28 U.S.C. §1332(a)(1) because Plaintiff and Defendant are diverse and the amount in controversy exceeds the sum of $75,000, excluding interest and costs.

    2.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b) as Defendant is a corporation doing business in the Western District of Wisconsin and as Plaintiff was formerly employed by Defendant in Wisconsin.

**PARTIES**

3. Plaintiff is a citizen and resident of the state of Washington.

4. Defendant is, upon information and belief, a Minnesota corporation, and is a successor in interest to Wisconsin Electric Power Company d/b/a/ We Energies (hereafter "WEPC").

**SALIENT FACTUAL ALLEGATIONS**

5. Plaintiff is a former employee of both WEPC and Defendant. On or about December 1, 1998, Plaintiff, as a (then) WEPC employee, and WEPC entered into a Special Retention Agreement (hereafter "Agreement"), a true copy of which is attached and incorporated as Exhibit "A."

6. Under the Agreement, WEPC was required, *inter alia,* to establish a bookkeeping account for Plaintiff and which was to be initially funded by WEPC with the sum of $160,000.00. Pursuant to Section 1 of the Agreement, the account was to receive an annual interest credit as determined under the WEPC's tax-qualified defined benefit plan, the Retirement Account Plan, for that year.

7. The Retirement Account Plan provided for an annual interest credit equal to at least 4% (four percent), plus 75% of the pension trust earnings *above* 4% (four percent) thereafter.

8. The Agreement further provided that if a successor company (e.g. Defendant) ever acquired the operating license for WEPC's Point Beach Nuclear Plant ("PBNP") and employed Plaintiff, then the annual interest credit would equal a minimum of 4% (four percent), plus 75% of the earnings *above* 4% (four percent) of a theoretical portfolio invested 60% in the S&P 500 Index and 40% in the Lehman Brothers

2

Aggregate Bond Index.

9. The PBNP operating license was transferred to a newly created company, Nuclear Management Company ("NMC"), which was jointly owned by several utility companies, including WEPC and Defendant. Defendant subsequently became sole owner of NMC and all remaining NMC employees, including Plaintiff, then became employees of Defendant.

10. The intent of the Agreement was to continue the same interest credit calculation following a successor company's acquisition of the PBNP operating license as was initially used under the Agreement, and there was no intent to alter the underlying formula for determining the amount of interest to credit the account. *See* WEPC's July 30, 2010 "Statement of Explanation," attached as Exhibit "B."

11. Because Plaintiff made an initial irrevocable election in 1998 to have the benefits paid to him over a ten (10) year period, the Agreement requires Defendant, as successor, to pay Plaintiff 10% (i.e. $1/10^{th}$) of the amount credited to his account as of the first business day of April following an Event of Maturity (as that term is defined in the Agreement).

12. On each subsequent first business day of April, $1/10^{th}$ of the account balance, including any credits to the account during the period intervening since the last payment, are to be paid until a total of ten (10) payments are made.

13. Plaintiff is informed and believes that the total amount now due and owing from Defendant under the aforesaid terms of the Agreement is not less than $757,000.00 (Seven Hundred Fifty Seven Thousand Dollars).

14.    To the extent that the Agreement may have been amended from time to time by WEPC or Defendant, Defendant's financial obligations as described herein remain unaffected, and Plaintiff has abided by all terms of the Agreement and any amendment.

15.    Plaintiff has made demand for payment in accordance with the terms of the Agreement, but Defendant refused to do so, and has indicated that it has no intention of honoring its payment terms.

16.    In view of the foregoing, Defendant's refusal to properly pay Plaintiff his initial 10% payment constitutes its breach of the Agreement.  Further, Defendant's refusal to agree to pay Plaintiff the remaining 9 (nine) installments, as requested by Plaintiff, constitutes its anticipatory breach of the Agreement.

17.    As a direct and proximate result of Defendant's breach(es) of the Agreement, Plaintiff has been, and will continue to sustain damages in an amount in excess of $75,000, plus lost interest and costs of suit, all as will be proven at trial.

**PLAINTIFF DEMANDS A JURY TRIAL**

### Relief Sought

**WHEREFORE,** Plaintiff prays that this Honorable Court grant judgment in his favor, and against Defendant, and award the following relief:

    A.    Order Defendant to pay him a total sum of at least $75,000.00, and in an amount to be proven at trial,

    B.    Award Plaintiff his lost interest thereon and his costs of litigation, and

    C.    Award Plaintiff such further and additional relief as may be just and proper.

5

Dated: December 14, 2010

**Respectfully submitted,**

/s/Randall B. Gold
Randall B. Gold
Fox & Fox, S.C.
124 West Broadway
Monona, WI 53716
608-258-9588
608-258-9105 (fax)
rgoldlaw@aol.com

5